# EXHIBIT G



December 12, 2024

**VIA EMAIL**

Gregory Koch
Director, Information Management Office
ATTN: FOIA/PA
Office of the Director of National Intelligence
Washington, D.C. 20511
odni_foia@odni.gov
dni-foia@dni.gov

**Re: Request for Expedited Processing of Freedom of Information Act Requests**

Dear Mr. Koch:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of the Office of the Director of National Intelligence (ODNI), 32 C.F.R. Part 1700, American Oversight requests that its three previously submitted FOIA requests be processed on an expedited basis because of the urgency to inform the public about matters of great public concern.

American Oversight's FOIA requests seek records with the potential to shed light on federal government operations and activities of Kash Patel, who President-elect Donald Trump announced on November 30, 2024, as his pick to lead the Federal Bureau of Investigation (FBI).[1] Mr. Patel is a former senior advisor to ODNI[2] and his expected nomination to lead the FBI has sparked considerable recent and ongoing media coverage and public controversy.[3] American Oversight's three FOIA requests date back

---

[1] Robert Legare, Andres Triay, Libby Cathey and Faris Tanyos, *Trump Intends to Name Former Aide Kash Patel as FBI Director*, CBS NEWS (Dec. 1, 2024, 10:53 AM), https://www.cbsnews.com/news/trump-to-name-kash-patel-as-fbi-director/.

[2] *See* Legare, Triay, Cathey and Tanyos (Dec. 1, 2024, 10:53 AM), *supra* note 1.

[3] *See, e.g.,* Alexandra Hutzler, *Tulsi Gabbard, Kash Patel and More Trump Picks Make the Rounds on Capitol Hill*, ABC NEWS (Dec. 12, 2024, 10:27 AM), https://abcnews.go.com/Politics/tulsi-gabbard-kash-patel-trump-picks-make-rounds/story?id=116724775; Sean O'Driscoll, *Chris Wray's Resignation Sets Up Legal Hurdle for Kash Patel's FBI Bid*, NEWSWEEK (Dec. 12, 2024, 8:46 AM), https://www.newsweek.com/chris-wray-fbi-director-donald-trump-kush-patel-january-inauguration-1999725; Jason Wilson, *'Cynical Cash Grab': FBI Chief Nominee Kash Patel's Profitable Links in the Non-Profit World*, THE GUARDIAN (Dec. 12, 2024, 7:00 AM), https://www.theguardian.com/us-news/2024/dec/12/kash-patel-foundation-maga-merchandise-fundraising; Sarah N. Lynch, *FBI Director Chris Wray To Resign Following Trump Nomination of Patel*, REUTERS (Dec. 11, 2024, 3:49 PM), https://www.reuters.com/world/us/fbi-director-wray-resign-fox-news-reports-2024-12-11/; Steve Benen, *Democrats Aren't Alone in Slamming Kash Patel's Prospective FBI Nomination*, MSNBC (Dec. 11, 2024, 10:01 AM), https://www.msnbc.com/rachel-

---



to Patel's federal service with ODNI in 2020[‡] and have the potential to shed light on whether and to what extent he contributed to any perceived or actual politicization of ODNI.

maddow-show/maddowblog/democrats-arent-alone-slamming-kash-patels-prospective-fbi-nomination-rcna183754; Dominick Mastrangelo, *Trump Sparks Fears Over Retribution Against Media with Patel FBI Pick*, THE HILL (Dec. 11, 2024, 6:00 AM), https://thehill.com/media/5030896-threats-kash-patel-fbi-media/; Beverly Gage, *Kash Patel vs. J. Edgar Hoover*, THE NEW YORKER, Dec. 11, 2024, https://www.newyorker.com/news/the-lede/kash-patel-vs-j-edgar-hoover; John Bolton, *Kash Patel Doesn't Belong at the FBI*, WALL STREET JOURNAL OPINION (Dec. 10, 2024, 12:27 PM), https://www.wsj.com/opinion/kash-patel-doesnt-belong-at-the-fbi-cabinet-nominee-5ef655eb; Peter Stone, *'Incredibly Harmful': Why Trump's FBI and DOJ Picks Scare Civil Liberties Experts*, THE GUARDIAN (Dec. 10, 2024, 6:00 AM), https://www.theguardian.com/us-news/2024/dec/10/trump-fbi-kash-patel-justice-department-pam-bondi; Rebecca Beitsch, *Patel FBI Plans Spark Concern Over Agency Independence, Retribution*, THE HILL (Dec. 10, 2024, 6:00 AM), https://thehill.com/homenews/5030794-trump-kash-patel-fbi-reform-independence/; Jude Joffe-Block, Lisa Hagen, and Audrey Nguyen, *How Kash Patel Has Used Children's Books and Podcasts To Promote Conspiracy Theories*, NPR (Dec. 10, 2024, 5:01 AM), https://www.npr.org/2024/12/09/nx-s1-5213692/kash-patel-conspiracy-theories-fbi; Dahlia Lithwick, *We've Seen Kash Patel's Enemies List. It's Terrifying.*, SLATE (Dec. 9, 2024, 5:42 PM), https://slate.com/news-and-politics/2024/12/trump-fbi-pick-kash-patel-enemies-list.html; Evan Perez, Zachary Cohen, and Holmes Lybrand, *'Someone Who Sees Enemies Everywhere': How Kash Patel's Years as a Government Lawyer Fueled His Disdain for Washington Elites*, CNN (Dec. 9, 2024, 6:00 AM), https://www.cnn.com/2024/12/09/politics/kash-patel-government-lawyer-fbi/index.html; Matthew Goldstein, *At Truth Social, Kash Patel Investigated Trump's Estranged Co-Founders*, NEW YORK TIMES, Dec. 6, 2024, https://www.nytimes.com/2024/12/06/business/kash-patel-trump-media-truth-social.html; Brooke Singman, *Here's What Kash Patel's Former Colleagues Are Saying about Him*, FOX NEWS (Dec. 6, 2024, 4:00 AM), https://www.foxnews.com/politics/heres-what-kash-patels-former-colleagues-saying-about-him; Natasha Korecki and Sahil Kapur, *Kash Patel Once Said He Would 'Come After' Journalists. It Now Hangs over His FBI Candidacy.*, NBC NEWS (Dec. 4, 2024, 2:09 PM), https://www.nbcnews.com/politics/donald-trump/kash-patel-said-come-journalists-now-hangs-fbi-candidacy-rcna182661; Eric Tucker, *Trump's FBI Pick Has Plans To Reshape the Bureau. This Is What Kash Patel Has Said He Wants To Do.*, ASSOCIATED PRESS (Dec. 3, 2024, 11:55 AM), https://apnews.com/article/fbi-trump-patel-fisa-russia-2d215ded96ad8a08689b6f7f0b2d49ec; Alison Durkee, *Trump Picks Kash Patel To Run FBI—And Here's Why Critics Are Worried*, FORBES (Nov. 30, 2024, 7:18 PM), https://www.forbes.com/sites/alisondurkee/2024/11/30/trump-picks-kash-patel-to-run--fbi-and-heres-why-critics-are-worried/.
[‡] *See* Daniel Lippman, *NSC Aide Who Worked To Discredit Russia Probe Moves To Senior ODNI Post*, POLITICO (Feb. 20, 2020, 8:00 PM), https://www.politico.com/news/2020/02/20/kash-patel-odni-post-116546.

ODNI-20-1951
ODNI-20-1952
ODNI-20-1953

As explained in more detail below, there is a compelling need for the expedited release of these records. 5 U.S.C. § 552(a)(6)(E)(5); 32 C.F.R. § 1700.6(h). Records responsive to these requests have renewed significance, and there is a current, compelling need to inform the public about these matters in light of President-elect Trump's announcement of Patel as his choice to lead the FBI. *See* 5 U.S.C. § 552(a)(6)(E)(v)(ii); 32 C.F.R. §§ 1700.6(h) and 1700.6(h)(2). American Oversight is an organization primarily engaged in the dissemination of information, and accordingly these requests qualify for a grant of expedited processing. *See id.*

**American Oversight's Open FOIA Requests**

On August 4, 2020, American Oversight submitted three FOIA requests to ODNI after that office had undergone significant leadership changes. Press reports in February 2020 indicated that President Trump decided to remove Joseph Maguire, Acting Director of National Intelligence ("DNI"), from his position after President Trump learned that the Intelligence Community had briefed Congress on Russian interference on Maguire's behalf in the 2020 elections.[5] In his place, the President named Ambassador to Germany Richard "Ric" Grenell—a political ally of the President with minimal experience in foreign policy or national security.[6] Acting DNI Grenell reportedly brought on Kash Patel, a former staffer of Representative Devin Nunes, who reportedly worked to discredit the investigation into Russian interference during the 2016 election as a senior advisor.[7] As acting DNI, Grenell played a role in multiple, high-profile political decisions—such as the decision to declassify the list of Obama administration officials who requested the "unmasking" of Trump associates communicating with foreign governments in 2016, as well as the review of the final portion of the Senate Select Committee on Intelligence's report on Russian interference in the 2016 election.[8] American Oversight's FOIA requests seek various records with the potential to shed light on Patel's activities with the office, including whether and to

---

[5] Ellen Nakashima et al., *Senior Intelligence Official Told Lawmakers that Russia Wants to See Trump Reelected*, WASHINGTON POST (Feb. 21, 2020, 6:53 AM), https://www.washingtonpost.com/national-security/after-a-congressional-briefing-on-election-threats-trump-soured-on-acting-spy-chief/2020/02/20/1ed2b4ec-53f1-11ea-b119-4faabac6674f_story.html.

[6] Julian Barnes & Maggie Haberman, *Trump Names Richard Grenell as Acting Head of Intelligence*, N.Y. TIMES, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/us/politics/dni-national-intelligence-director-grenell.html.

[7] Daniel Lippman, *NSC Aide Who Worked to Discredit Russia Probe Moves to Senior ODNI Post*, Politico (Feb. 20, 2020, 8:00 PM), https://www.politico.com/news/2020/02/20/kash-patel-odni-post-116546.

[8] Julian Barnes & Katie Benner, *Intelligence Chief Declassifies List of Obama-Era Names in Unusual Step*, N.Y. TIMES, May 12, 2020, https://www.nytimes.com/2020/05/12/us/politics/richard-grenell-declassification-unmasking-list.html; Ken Dilanian, *Burr Asks That Final Volume of Senate Intel Report on Trump and Russia Be Declassified*, NBC NEWS (May 15, 2020, 3:55 PM), https://www.nbcnews.com/politics/donald-trump/last-act-chair-burr-asks-final-volume-senate-intel-report-n1208061.

ODNI-20-1951
ODNI-20-1952
ODNI-20-1953

what extent he orchestrated or contributed to any politicization of ODNI, as well as individuals and groups with whom he may have communicated or met, and whether and to what extent those interactions may have influenced his official activities.

American Oversight's first FOIA request to ODNI, bearing an internal tracking number of ODNI-20-1951, seeks the following records: (1) emails sent by Kash Patel; (2) Kash Patel's calendars; (3) Kash Patel's government travel itineraries; and (4) actual or projected costs of Kash Patel's government travel. American Oversight seeks responsive records from the cutoff date applied by ODNI to American Oversight's similar request given tracking number DF-2020-00241 and submitted on May 20, 2020, through the date the search is conducted. A true and correct copy of American Oversight's first FOIA request is attached as Exhibit A. On August 6, 2020, ODNI acknowledged receipt of Exhibit A, granted American Oversight's request for a fee waiver, and assigned it tracking number DF-2020-00315. A true and correct copy of ODNI's acknowledgement letter is attached as Exhibit B.

American Oversight's second FOIA request to ODNI, bearing an internal tracking number of ODNI-20-1952, seeks email communications between Kash Patel and a number of individuals in Congress from the cutoff date ODNI applied to American Oversight's similar request given tracking number DF-2020-00242 and submitted on May 20, 2020, through the date the search is conducted. A true and correct copy of American Oversight's second FOIA request is attached as Exhibit C. On August 6, 2020, ODNI acknowledged receipt of Exhibit C, granted American Oversight's request for a fee waiver, and assigned it tracking number DF-2020-00316. A true and correct copy of ODNI's acknowledgement letter is attached as Exhibit D.

American Oversight's third FOIA request to ODNI, bearing an internal tracking number of ODNI-20-1953, seeks emails sent by Kash Patel or Richard Grenell that contain any one of several key terms related to a number of controversial actions and policies associated with Patel and Grenell,[9] from the cutoff date ODNI applied to American Oversight's similar request given tracking number DF-2020-00244 and submitted on May 20, 2020, through the date the search is conducted. A true and correct copy of American Oversight's third FOIA request is attached as Exhibit E. On August 6, 2020, ODNI acknowledged receipt of Exhibit E, granted American Oversight's request for a fee waiver, and assigned it tracking number DF-2020-00317. A true and correct copy of ODNI's acknowledgement letter is attached as Exhibit F.

To date, <u>American Oversight has not received any records nor further correspondence from ODNI regarding any of the three FOIA requests described above</u>.

**American Oversight Requests Expedited Processing of the Above-Described FOIA Requests**

---

[9] *See, e.g.*, Barnes & Benner (May 12, 2020), Dilanian (May 15, 2020, 3:55 PM), *supra* note 8.

ODNI-20-1951
ODNI-20-1952
ODNI-20-1953

Pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and 32 C.F.R. § 1700.6(h)(2), American Oversight requests that your agency expedite the processing of the three attached requests. *See* Exs. A, C, E.

On behalf of American Oversight, I <u>certify</u> to be true and correct to the best of my knowledge and belief that there is a compelling need for expedited processing of the attached requests because the information requested is urgently needed in order to inform the public about an actual or alleged Federal Government activity and American Oversight is primarily engaged in disseminating the information it receives from public records requests to the public, as its primary professional activity or occupation is information dissemination. *See* 5 U.S.C. § 552(a)(6)(E)(5)(ii) and 32 C.F.R. § 1700.6(h)(2).

President-elect Trump's recent announcement that he intends to nominate Kash Patel to lead the FBI and the voluminous media coverage about Patel show that there is clearly a compelling need to inform the public about Patel's work at ODNI during the first Trump term.[10] Patel's potential nomination has drawn a flood of national media coverage, based in part on his documented history as a controversial figure who entertains conspiracy theories.[11] For example, recent reporting has unearthed quotes from a previous appearance Patel made on conservative strategist Steve Bannon's podcast, including Patel's comment that he is "going to come after the people in the media who lied about American citizens, who helped Joe Biden rig presidential elections."[12]

Given President-elect Trump's fast-approaching inauguration and Patel's high-profile status as the next potential leader of the country's domestic intelligence and security service, the American public is entitled to records responsive to American Oversight's requests centered on Patel's previous work at ODNI. The public urgently needs the information American Oversight has requested so that citizens can inform themselves and engage their senators prior to Patel's likely imminent confirmation hearing. The public deserves to know whether and to what extent Patel may have contributed to the politicization of ODNI during his time in that office *before* he is confirmed to lead the country's principal federal law enforcement agency. American Oversight's and the public's urgent, compelling need for this information is clear.

---

[10] *See supra* notes 1–3.

[11] *See id.; see also* Nikki McCann Ramirez, Asawin Suesaeng, and Andrew Perez, *Why Kash Patel May Be Trump's Scariest Pick Yet*, ROLLING STONE, Dec. 3, 2024, https://www.rollingstone.com/politics/politics-features/kash-patel-fbi-director-trump-1235188073/; Alan Suderman and Juliet Linderman, *Kash Patel is Pushing Conspiracies and His Brand. He's Poised to Help Lead a Trump Administration*, ASSOCIATED PRESS, July 9, 2024, https://www.ap.org/news-highlights/spotlights/2024/kash-patel-is-pushing-conspiracies-and-his-brand-hes-poised-to-help-lead-a-trump-administration/.

[12] Erick Tucker (AP), *What Trump's FBI Director Pick Says He Wants To Do To Reshape the Bureau*, PBS NEWS (Dec. 3, 2024, 2:31 PM), https://www.pbs.org/newshour/politics/what-trumps-fbi-director-pick-says-he-wants-to-do-to-reshape-the-bureau.

ODNI-20-1951
ODNI-20-1952
ODNI-20-1953

I further <u>certify</u> that American Oversight's primary professional activity and occupation is disseminating information to the public. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. Each component of this mission is primarily achieved through disseminating records and information to the public obtained from government officials and offices, including by direct publication of those records as well as creation and publication of editorial content relying on information reflected in those records. Attached as Exhibit G are true and correct copies of the cover page and pages 36–47 excerpted from the transcript of a motion hearing before United States District Court for the District of Columbia Judge Paul L. Friedman, wherein the court expressly found that American Oversight is an organization that is primarily engaged in disseminating information.[13]

Indeed, similar to other organizations that have been found to satisfy the criteria necessary to qualify for expedition,[14] American Oversight "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'"[15] American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, and other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[16] As discussed previously, American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content.[17] These functions comprise American Oversight's core, primary activities.

---

[13] Oct. 21, 2024 Mot. Hr'g Tr., *Am. Oversight v. U.S. Dep't of Just.*, U.S. D.D.C. Case No. 1:24-cv-02789-PLF.

[14] *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30–31 (D.D.C. 2004); *Electronic Privacy Info. Ctr. v. Dep't of Defense* ("EPIC"), 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

[15] *ACLU*, 321 F. Supp. 2d at 29 n.5 (quoting *EPIC*, 241 F. Supp. 2d at 11).

[16] American Oversight currently has approximately 16,000 followers on Facebook and 98,300 followers on X (formerly Twitter). American Oversight, FACEBOOK, https://www.facebook.com/weareoversight (last visited Dec. 12, 2024); American Oversight (@weareoversight), X (formerly Twitter), https://x.com/weareoversight (last visited Dec. 12, 2024).

[17] *See generally News*, AMERICAN OVERSIGHT, https://www.americanoversight.org/blog; *see, e.g.*, *DOJ Civil Division Response Noel Francisco Compliance*, AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents; *Audit the Wall*, AMERICAN OVERSIGHT, https://www.americanoversight.org/investigation/audit-the-wall; *Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall*, AMERICAN OVERSIGHT, https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-funding-no-timeline-no-wall; *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, AMERICAN OVERSIGHT, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business; *Investigating the Trump Administration's*

ODNI-20-1951
ODNI-20-1952
ODNI-20-1953

Accordingly, American Oversight's FOIA request satisfies the criteria for expedited processing. Please contact Ben Sparks at foia@americanoversight.org or (202) 873-1741 to discuss this request for expedited processing.

Sincerely,

*/s/ Ben Sparks*
Ben Sparks
on behalf of
American Oversight

---

*Efforts to Sell Nuclear Technology to Saudi Arabia*, AMERICAN OVERSIGHT, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia; *Sessions' Letter Shows DOJ Acted On Trump's Authoritarian Demand to Investigate Clinton*, AMERICAN OVERSIGHT, https://www.americanoversight.org/sessions-letter.

ODNI-20-1951
ODNI-20-1952
ODNI-20-1953

# EXHIBIT A



August 4, 2020

<u>VIA EMAIL</u>

Patricia Gaviria
Office of the Director of National Intelligence
Information Management Division
ATTN: FOIA/PA
Washington, DC 20511
dni-foia@dni.gov

**Re: Freedom of Information Act Request**

Dear Ms. Gaviria:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of your agency, American Oversight makes the following request for records.

The Office of the Director of National Intelligence (ODNI) has undergone significant leadership changes this year. Press reports in February indicated that President Trump decided to remove Joseph Maguire, Acting Director of National Intelligence (DNI), from his position after President Trump learned that the Intelligence Community had briefed Congress on Russian interference on Maguire's behalf in the 2020 elections.[1] In his place, the president named Ambassador to Germany Richard "Ric" Grenell—a political ally of the president, with minimal experience in foreign policy or national security.[2] Acting DNI Grenell reportedly brought on Kash Patel, a former staffer of Representative Devin Nunes who reportedly worked to discredit the investigation into Russian interference during the 2016 election, as a senior advisor.[3] In his role as acting DNI, Grenell has played a role in multiple, high-profile political decisions—such as the decision to declassify the list of

---

[1] Ellen Nakashima et al., *Senior Intelligence Official Told Lawmakers that Russia Wants to See Trump Reelected,* Wash. Post (Feb. 21, 2020, 6:53 AM), https://www.washingtonpost.com/national-security/after-a-congressional-briefing-on-election-threats-trump-soured-on-acting-spy-chief/2020/02/20/1ed2b4ec-53f1-11ea-b119-4faabac6674f_story.html.
[2] Julian Barnes & Maggie Haberman, *Trump Names Richard Grenell as Acting Head of Intelligence,* N.Y. Times, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/us/politics/dni-national-intelligence-director-grenell.html.
[3] Daniel Lippman, *NSC Aide Who Worked to Discredit Russia Probe Moves to Senior ODNI Post,* Politico (Feb. 20, 2020, 8:00 PM), https://www.politico.com/news/2020/02/20/kash-patel-odni-post-116546.

Obama administration officials who requested the "unmasking" of Trump associates communicating with foreign governments in 2016—as well as the review of the final portion of the Senate Select Committee on Intelligence (SSCI)'s report on Russian interference in the 2016 election.[4]

American Oversight seeks records to shed light on whether and to what extent the President is politicizing the Intelligence Community.

**Requested Records**

American Oversight requests that ODNI produce the following records within twenty business days:

1.  All email communications (including messages, attachments, and complete email chains) sent by ODNI Senior Advisor Kash Patel to anyone with an email address ending in .com / .org / .mail / .net / .edu / .us.

    American Oversight has limited its request to sent messages to reduce the volume of potentially responsive records. American Oversight still requests complete email chains. So, for example, if Mr. Patel sent a response to an incoming message received from an email address ending in ".com," the email chain containing the initially received message and the response is responsive to this request.

2.  All calendars or calendar entries for ODNI Senior Advisor Kash Patel, including any calendars maintained on behalf of Mr. Patel.

    American Oversight requests that the calendars be produced in a format that includes all invitees, any notes, and all attachments. Please do not limit your search to Outlook calendars; we request the production of any calendar—paper or electronic, whether on government-issued or personal devices—used to track or coordinate how Mr. Patel allocates his time on agency business.

3.  Any itineraries (or records reflecting itineraries) for ODNI Senior Advisor Kash Patel's official government travel, including records reflecting the substance of the trips—such as email messages, cables, trip agendas, line-by-line schedules, or other records reflecting meetings.

---

[4] Julian Barnes & Katie Benner, *Intelligence Chief Declassifies List of Obama-Era Names in Unusual Step,* N.Y. Times, May 12, 2020, https://www.nytimes.com/2020/05/12/us/politics/richard-grenell-declassification-unmasking-list.html; Ken Dilanian, *Burr Asks That Final Volume of Senate Intel Report on Trump and Russia Be Declassified,* NBC News (May 15, 2020, 3:55 PM), https://www.nbcnews.com/politics/donald-trump/last-act-chair-burr-asks-final-volume-senate-intel-report-n1208061.

ODNI-20-1951

4. All records reflecting actual or projected costs of ODNI Senior Advisor Kash Patel's government travel, including air travel, lodging, and security expenses for Mr. Patel. All electronic travel vouchers, invoices, expense reports, government credit card bills, reimbursements related to the trips—including but not limited to hotel bills, meals, and other reimbursements related to the trip—are responsive to this request.

For all parts of this request, please produce all responsive records from the cutoff date employed by your agency for American Oversight's similar request (given tracking number DF-2020-00241) submitted on May 20, 2020, through the date the search is conducted.

For parts 2–4 of this request, we request that calendars and travel records maintained on both classified and unclassified systems be produced, as we believe there is likely segregable non-exempt material maintained on the classified system.

**<u>Fee Waiver Request</u>**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's regulations, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[5] The public has a significant interest in ensuring that ODNI does not become politicized but rather is able to continue providing objective, unbiased assessments to national security decisionmakers. Records with the potential to shed light on recent leadership transitions would contribute significantly to public understanding of operations of the federal government, including whether and to what extent decisions about ODNI leadership are being made for political reasons. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[6] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American

---

[5] 5 U.S.C. § 552(a)(4)(A)(iii).

[6] *See id.*

ODNI-20-1951

Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter. [7]

American Oversight has also demonstrated its commitment to the public disclosure of documents and creation of editorial content through numerous substantive analyses posted to its website.[8] Examples reflecting this commitment to the public disclosure of documents and the creation of editorial content include the posting of records related to an ethics waiver received by a senior Department of Justice attorney and an analysis of what those records demonstrated regarding the Department's process for issuing such waivers;[9] posting records received as part of American Oversight's "Audit the Wall" project to gather and analyze information related to the administration's proposed construction of a barrier along the U.S.-Mexico border, and analyses of what those records reveal;[10] posting records regarding potential self-dealing at the Department of Housing & Urban Development and related analysis;[11] posting records and analysis relating to the federal government's efforts to sell nuclear technology to Saudi Arabia;[12] and posting records and analysis regarding the Department of Justice's decision in response to demands from Congress to direct a U.S. Attorney to undertake a wide-ranging review and make recommendations regarding criminal investigations relating to the President's political

---

[7] American Oversight currently has approximately 15,500 page likes on Facebook and 104,200 followers on Twitter. American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Jul. 13 , 2020); American Oversight (@weareoversight), Twitter, https://twitter.com/weareoversight (last visited Jul. 13, 2020).

[8] *News*, American Oversight, https://www.americanoversight.org/blog.

[9] *DOJ Records Relating to Solicitor General Noel Francisco's Recusal,* American Oversight, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ Documents,* American Oversight, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[10] *See generally Audit the Wall*, American Oversight, https://www.americanoversight.org/investigation/audit-the-wall; *see, e.g., Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall,* American Oversight, https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-funding-no-timeline-no-wall.

[11] *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, American Oversight, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business.

[12] *Investigating the Trump Administration's Efforts to Sell Nuclear Technology to Saudi Arabia*, American Oversight, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia.

ODNI-20-1951

opponents and allegations of misconduct by the Department of Justice itself and the Federal Bureau of Investigation.[13]

Accordingly, American Oversight qualifies for a fee waiver.

## Guidance Regarding the Search & Processing of Requested Records

In connection with its request for records, American Oversight provides the following guidance regarding the scope of the records sought and the search and processing of records:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics. For instance, since the request seeks "communications," please search all locations likely to contain communications, including relevant hard-copy files, correspondence files, appropriate locations on hard drives and shared drives, emails, text messages or other direct messaging systems (such as iMessage, WhatsApp, Signal, or Twitter direct messages), voicemail messages, instant messaging systems such as Lync or ICQ, and shared messages systems such as Slack.

- In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

- Our request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[14] It is not adequate to rely on policies and procedures that

---

[13] *Sessions' Letter Shows DOJ Acted on Trump's Authoritarian Demand to Investigate Clinton*, American Oversight, https://www.americanoversight.org/sessions-letter.

[14] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.[15]

▪ Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically,[16] and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

▪ In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

▪ Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## Conclusion

If you have any questions regarding how to construe this request for records or believe that further discussions regarding search and processing would facilitate a more efficient production of records of interest to American Oversight, please do not hesitate to contact American Oversight to discuss this request. American Oversight welcomes an opportunity

---

[15] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

[16] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and your agency can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in an electronic format by email. Alternatively, please provide responsive material in native format or in PDF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, please contact Hart Wood at foia@americanoversight.org or 202.873.1743. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

ODNI-20-1951

# EXHIBIT B

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC

Austin Evers                                                                                          August 6, 2020
American Oversight
1030 15th Street NW
Suite B255
Washington, DC  20005

Mr. Evers,

This letter acknowledges receipt of your Freedom of Information Act ("FOIA")
request dated and received by the IMD on 4 Aug 2020, in which you seek:

"1. All email communications (including messages, attachments, and complete
email chains) sent by ODNI Senior Advisor Kash Patel to anyone with an email
address ending in .com / .org / .mail / .net / .edu / .us.

2. All calendars or calendar entries for ODNI Senior Advisor Kash Patel,
including any calendars maintained on behalf of Mr. Patel.

3. Any itineraries (or records reflecting itineraries) for ODNI Senior Advisor Kash
Patel's official government travel, including records reflecting the substance of
the trips- such as email messages, cables, trip agendas, line-by-line schedules,
or other records reflecting meetings.

4. All records reflecting actual or projected costs of ODNI Senior Advisor Kash
Patel's government travel, including air travel, lodging, and security expenses
for Mr. Patel. All electronic travel vouchers, invoices, expense reports,
government credit card bills, reimbursements related to the trips-including
but not limited to hotel bills, meals, and other reimbursements related to the
trip-are responsive to this request.

For all parts of this request, please produce all responsive records from the cutoff
date employed by your agency for American Oversight's similar request (given
tracking number DF-2020-00241) submitted on May 20, 2020, through the date
the search is conducted."

**Your request has been assigned ODNI tracking number DF-2020-00315.
Your request for a fee waiver has been granted.**

We will begin to process your request; however, due to impacts caused by the
COVID-19 virus, there may be delays in processing requests.   We apologize for any
inconvenience this may cause.

1

# EXHIBIT C



August 4, 2020

**<u>VIA EMAIL</u>**

Patricia Gaviria
Office of the Director of National Intelligence
Information Management Division
ATTN: FOIA/PA
Washington, DC 20511
dni-foia@dni.gov

**Re: Freedom of Information Act Request**

Dear Ms. Gaviria:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the
implementing regulations of your agency, American Oversight makes the following
request for records.

The Office of the Director of National Intelligence (ODNI) has undergone significant
leadership changes this year. Press reports in February indicated that President Trump
decided to remove Joseph Maguire, Acting Director of National Intelligence (DNI), from
his position after President Trump learned that the Intelligence Community had briefed
Congress on Russian interference on Maguire's behalf in the 2020 elections.[1] In his place,
the president named Ambassador to Germany Richard "Ric" Grenell—a political ally of the
president, with minimal experience in foreign policy or national security.[2] Acting DNI
Grenell reportedly brought on Kash Patel, a former staffer of Representative Devin Nunes
who reportedly worked to discredit the investigation into Russian interference during the
2016 election, as a senior advisor.[3] In his role as acting DNI, Grenell has played a role in
multiple, high-profile political decisions—such as the decision to declassify the list of

---

[1] Ellen Nakashima et al., *Senior Intelligence Official Told Lawmakers that Russia Wants to See
Trump Reelected,* Wash. Post (Feb. 21, 2020, 6:53 AM),
https://www.washingtonpost.com/national-security/after-a-congressional-briefing-on-
election-threats-trump-soured-on-acting-spy-chief/2020/02/20/1ed2b4ec-53f1-11ea-
b119-4faabac6674f_story.html.
[2] Julian Barnes & Maggie Haberman, *Trump Names Richard Grenell as Acting Head of
Intelligence,* N.Y. Times, Feb. 19, 2020,
https://www.nytimes.com/2020/02/19/us/politics/dni-national-intelligence-director-
grenell.html.
[3] Daniel Lippman, *NSC Aide Who Worked to Discredit Russia Probe Moves to Senior ODNI Post*,
Politico (Feb. 20, 2020, 8:00 PM), https://www.politico.com/news/2020/02/20/kash-
patel-odni-post-116546.

Obama administration officials who requested the "unmasking" of Trump associates communicating with foreign governments in 2016—as well as the review of the final portion of the Senate Select Committee on Intelligence (SSCI)'s report on Russian interference in the 2016 election.[4]

American Oversight seeks records to shed light on whether and to what extent the President is politicizing the Intelligence Community.

**Requested Records**

American Oversight requests that ODNI produce the following records within twenty business days:

> All email communications (including messages, attachments, and complete email chains) <u>between</u> (a) ODNI Senior Advisor Kash Patel or Deputy to the COO Nick Ciarlante and (b) any of the following individuals (including *but not limited to* at the email addresses provided):

> i.      Rep. Devin Nunes
> ii.     Jilian Plank (jilian.plank@mail.house.gov)
> iii.    Derek Harvey (derek.harvey@mail.house.gov)
> iv.     Jennifer Morrow (Jennifer.morrow@mail.house.gov)
> v.      Jack Langer (jack.langer@mail.house.gov)
> vi.     Ian Foley (ian.foley@mail.house.gov)
> vii.    Anyone else communicating on behalf of Rep. Devin Nunes, including on both his personal staff and his staff for the House Permanent Select Committee on Intelligence (HPSCI), and staff for his campaign
> viii.   Anyone communicating from an email address ending in @mail.house.gov
> ix.     Sen. Chuck Grassley
> x.      Aaron Cummings (aaron_cummings@grassley.senate.gov)
> xi.     Jennifer Heins (Jennifer_heins@grassley.senate.gov)
> xii.    James Rice (james_rice@grassley.senate.gov)
> xiii.   George Hartmann (george_hartmann@grassley.senate.gov)
> xiv.    Michael Zona (Michael_zona@grassley.senate.gov)

---

[4] Julian Barnes & Katie Benner, *Intelligence Chief Declassifies List of Obama-Era Names in Unusual Step,* N.Y. Times, May 12, 2020, https://www.nytimes.com/2020/05/12/us/politics/richard-grenell-declassification-unmasking-list.html; Ken Dilanian, *Burr Asks That Final Volume of Senate Intel Report on Trump and Russia Be Declassified,* NBC News (May 15, 2020, 3:55 PM), https://www.nbcnews.com/politics/donald-trump/last-act-chair-burr-asks-final-volume-senate-intel-report-n1208061.

xv.    Anyone else communicating on behalf of Sen. Grassley, including anyone with an email address ending in @grassley.senate.gov, his staff for the Senate Finance Committee, and campaign staff

xvi.    Sen. Ron Johnson

xvii.    Tony Blando (tony_blando@ronjohnson.senate.gov)

xviii.    Chloe Pickle (chloe_pickle@ronjohnson.senate.gov)

xix.    Courtney Allen Rutland (Courtney_rutland@ronjohnson.senate.gov, Courtney_rutland@hsgac.senate.gov)

xx.    Ben Voelkel (ben_voelkel@ronjohnson.senate.gov)

xxi.    Anyone else communicating on behalf of Sen. Johnson, including anyone with an email address ending in @ronjohnson.senate.gov, and his staff for the Homeland Security Committee

xxii.    Anyone serving on the Senate Homeland Security and Governmental Affairs Committee (HSGAC), including anyone with an email address ending in hsgac.senate.gov

xxiii.    Rep. Jim Jordan

xxiv.    Kevin Eichinger (kevin.eichinger@mail.house.gov)

xxv.    Emma Summers (emma.summers@mail.house.gov)

xxvi.    Jared Dilley (jared.dilley@mail.house.gov)

xxvii.    Ian Fury (ian.fury@mail.house.gov)

xxviii.    Anyone else communicating on behalf of Rep. Jordan, including anyone on his personal staff and his staff for the Judiciary Committee

xxix.    Former Rep. Mark Meadows (mark.meadows@mail.house.gov)

xxx.    Ben Williamson (ben.williamson@mail.house.gov)

xxxi.    Kate Morgan (kate.morgan@mail.house.gov)

xxxii.    Eric Heigis (eric.heigis@mail.house.gov)

Please produce all responsive records from the cutoff date employed by your agency for American Oversight's similar request (given tracking number DF-2020-00242) submitted on May 20, 2020, through the date the search is conducted.

**Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's regulations, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[5] The public has a

---

[5] 5 U.S.C. § 552(a)(4)(A)(iii).

significant interest in ensuring that ODNI does not become politicized but rather is able to continue providing objective, unbiased assessments to national security decisionmakers. Records with the potential to shed light on recent leadership transitions would contribute significantly to public understanding of operations of the federal government, including whether and to what extent decisions about ODNI leadership are being made for political reasons. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[6] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[7]

American Oversight has also demonstrated its commitment to the public disclosure of documents and creation of editorial content through numerous substantive analyses posted to its website.[8] Examples reflecting this commitment to the public disclosure of documents and the creation of editorial content include the posting of records related to an ethics waiver received by a senior Department of Justice attorney and an analysis of what those records demonstrated regarding the Department's process for issuing such waivers;[9] posting records received as part of American Oversight's "Audit the Wall" project to gather and analyze information related to the administration's proposed construction of a barrier along the U.S.-Mexico border, and analyses of what those records reveal;[10]

---

[6] *See id.*

[7] American Oversight currently has approximately 15,500 page likes on Facebook and 104,200 followers on Twitter. American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Jul. 13, 2020); American Oversight (@weareoversight), Twitter, https://twitter.com/weareoversight (last visited Jul. 13, 2020).

[8] *News*, American Oversight, https://www.americanoversight.org/blog.

[9] *DOJ Records Relating to Solicitor General Noel Francisco's Recusal*, American Oversight, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, American Oversight, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[10] *See generally Audit the Wall*, American Oversight, https://www.americanoversight.org/investigation/audit-the-wall; *see, e.g., Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall*, American Oversight,

posting records regarding potential self-dealing at the Department of Housing & Urban Development and related analysis;[11] posting records and analysis relating to the federal government's efforts to sell nuclear technology to Saudi Arabia;[12] and posting records and analysis regarding the Department of Justice's decision in response to demands from Congress to direct a U.S. Attorney to undertake a wide-ranging review and make recommendations regarding criminal investigations relating to the President's political opponents and allegations of misconduct by the Department of Justice itself and the Federal Bureau of Investigation.[13]

Accordingly, American Oversight qualifies for a fee waiver.

**Guidance Regarding the Search & Processing of Requested Records**

In connection with its request for records, American Oversight provides the following guidance regarding the scope of the records sought and the search and processing of records:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics. For instance, since the request seeks "communications," please search all locations likely to contain communications, including relevant hard-copy files, correspondence files, appropriate locations on hard drives and shared drives, emails, text messages or other direct messaging systems (such as iMessage, WhatsApp, Signal, or Twitter direct messages), voicemail messages, instant messaging systems such as Lync or ICQ, and shared messages systems such as Slack.

- In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

---

https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-funding-no-timeline-no-wall.

[11] *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, American Oversight, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business.

[12] *Investigating the Trump Administration's Efforts to Sell Nuclear Technology to Saudi Arabia*, American Oversight, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia.

[13] *Sessions' Letter Shows DOJ Acted on Trump's Authoritarian Demand to Investigate Clinton*, American Oversight, https://www.americanoversight.org/sessions-letter.

ODNI-20-1952

- Our request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[14] It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.[15]

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically,[16] and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the

---

[14] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

[15] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

[16] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

ODNI-20-1952

requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

<u>Conclusion</u>

If you have any questions regarding how to construe this request for records or believe that further discussions regarding search and processing would facilitate a more efficient production of records of interest to American Oversight, please do not hesitate to contact American Oversight to discuss this request. American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and your agency can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in an electronic format by email. Alternatively, please provide responsive material in native format or in PDF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, please contact Hart Wood at foia@americanoversight.org or 202.873.1743. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

ODNI-20-1952

# EXHIBIT D

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC

Austin Evers                                                          August 6, 2020
American Oversight
1030 15th Street NW
Suite B255
Washington, DC  20005

Mr. Evers,

    This letter acknowledges receipt of your Freedom of Information Act ("FOIA")
request dated and received by the IMD on 4 Aug 2020, in which you seek, all email
communications (including messages, attachments, and complete email chains) between (a)
ODNI Senior Advisor Kash Patel or Deputy to the COO Nick Ciarlante and (b) any of the
32 listed individuals (including but not limited to at the email addresses provided).  You
asked tht we produce *all* responsive records from the cutoff date employed by our agency
for American Oversight's similar request (given tracking number DF-2020-00242)
submitted on May 20, 2020, through the date the search is conducted.

    **Your request has been assigned ODNI tracking number DF-2020-00316.
Your request for a fee waiver has been granted.**

    We will begin to process your request; however, due to impacts caused by the
COVID-19 virus, there may be delays in processing requests.   We apologize for any
inconvenience this may cause.

    To assist you with any aspect of your request you may contact me, the FOIA Public
Liaison, at my contact information below.  You may also contact the Office of Government
Information Services ("OGIS") of the National Archives and Records Administration to
inquire about the mediation services they provide. OGIS can be reached by mail at 8601
Adelphi Road, Room 2510, College Park, MD 20740-6001; telephone (202) 741-5770;
facsimile (202) 741-5769; Toll-free (877) 684-6448; or email at ogis@nara.gov.

    If you have any questions, please feel free to contact our Requester Service Center
at dni-foia@dni.gov or (301) 243-1499.  You may also reach out to me directly at
dni-foia-liaison@dni.gov or (301) 243-2025.

                                        Sincerely,

                                        Sally A. Nicholson

                                        Sally A. Nicholson
                                        Chief FOIA Branch
                                        FOIA Public Liaison
                                        Information Management Division

1

# EXHIBIT E



August 4, 2020

**VIA EMAIL**

Patricia Gaviria
Office of the Director of National Intelligence
Information Management Division
ATTN: FOIA/PA
Washington, DC 20511
dni-foia@dni.gov

**Re: Freedom of Information Act Request**

Dear Ms. Gaviria:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of your agency, American Oversight makes the following request for records.

The Office of the Director of National Intelligence (ODNI) has undergone significant leadership changes this year. Press reports in February indicated that President Trump decided to remove Joseph Maguire, Acting Director of National Intelligence (DNI), from his position after President Trump learned that the Intelligence Community had briefed Congress on Russian interference on Maguire's behalf in the 2020 elections.[1] In his place, the president named Ambassador to Germany Richard "Ric" Grenell—a political ally of the president, with minimal experience in foreign policy or national security.[2] Acting DNI Grenell reportedly brought on Kash Patel, a former staffer of Representative Devin Nunes who reportedly worked to discredit the investigation into Russian interference during the 2016 election, as a senior advisor.[3] In his role as acting DNI, Grenell has played a role in multiple, high-profile political decisions—such as the decision to declassify the list of

---

[1] Ellen Nakashima et al., *Senior Intelligence Official Told Lawmakers that Russia Wants to See Trump Reelected,* Wash. Post (Feb. 21, 2020, 6:53 AM), https://www.washingtonpost.com/national-security/after-a-congressional-briefing-on-election-threats-trump-soured-on-acting-spy-chief/2020/02/20/1ed2b4ec-53f1-11ea-b119-4faabac6674f_story.html.
[2] Julian Barnes & Maggie Haberman, *Trump Names Richard Grenell as Acting Head of Intelligence,* N.Y. Times, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/us/politics/dni-national-intelligence-director-grenell.html.
[3] Daniel Lippman, *NSC Aide Who Worked to Discredit Russia Probe Moves to Senior ODNI Post,* Politico (Feb. 20, 2020, 8:00 PM), https://www.politico.com/news/2020/02/20/kash-patel-odni-post-116546.

Obama administration officials who requested the "unmasking" of Trump associates communicating with foreign governments in 2016—as well as the review of the final portion of the Senate Select Committee on Intelligence (SSCI)'s report on Russian interference in the 2016 election.[4]

American Oversight seeks records to shed light on whether and to what extent the President is politicizing the intelligence community.

**Requested Records**

American Oversight requests that ODNI produce the following records within twenty business days:

> All email communications (email messages, email attachments, complete email chains, and calendar invitations) <u>sent</u> by Acting Director of National Intelligence Richard Grenell or Senior Advisor Kash Patel containing any of the following key terms:

|       |                         |
|-------|-------------------------|
| i.    | Unmasking               |
| ii.   | Flynn                   |
| iii.  | Kislyak                 |
| iv.   | "Obama people"          |
| v.    | Obamagate               |
| vi.   | "Ezra Cohen"            |
| vii.  | Cohen-Watnick           |
| viii. | Biden                   |
| ix.   | Burisma                 |
| x.    | Hunter                  |
| xi.   | Zelensky                |
| xii.  | Giuliani                |
| xiii. | "Blue Star"             |
| xiv.  | Telizhenko.             |
| xv.   | "declassification review" |
| xvi.  | "Russia investigation"  |
| xvii. | "Russian active measures" |
| xviii.| "Volume 5"              |
| xix.  | Mueller                 |

---

[4] Julian Barnes & Katie Benner, *Intelligence Chief Declassifies List of Obama-Era Names in Unusual Step,* N.Y. Times, May 12, 2020, https://www.nytimes.com/2020/05/12/us/politics/richard-grenell-declassification-unmasking-list.html; Ken Dilanian, *Burr Asks That Final Volume of Senate Intel Report on Trump and Russia Be Declassified,* NBC News (May 15, 2020, 3:55 PM), https://www.nbcnews.com/politics/donald-trump/last-act-chair-burr-asks-final-volume-senate-intel-report-n1208061.

xx.    "election security"

American Oversight has limited its request to <u>sent</u> messages of only two custodians to reduce the volume of potentially responsive records. American Oversight still requests complete email chains. So, for example, if Acting DNI Grenell sent a response to an incoming message containing one of the key terms above, the email chain containing the initially received message and the response is responsive to this request.

We request responsive records maintained on both classified and unclassified systems be produced, as we believe there is likely segregable non-exempt material maintained on the classified system. For example, according to public reporting, Acting Director Grenell this month declassified information related to unmasking requests regarding former National Security Advisor Michael Flynn.[5] Therefore we anticipate significant non-exempt materials in response to multiple search terms above.

Please produce all responsive records from the cutoff date employed by your agency or American Oversight's similar request (given tracking number DF-2020-00244) submitted on May 20, 2020, through the date the search is conducted.

**Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's regulations, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government."[6] The public has a significant interest in ensuring that ODNI does not become politicized but rather is able to continue providing objective, unbiased assessments to national security decisionmakers. Records with the potential to shed light on recent leadership transitions would contribute significantly to public understanding of operations of the federal government, including whether and to what extent decisions about ODNI leadership are being made for political reasons. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available, and the public's understanding of the

---

[5] Andrew Desidero & Betsy Woodruff Swan, *Intel Chief Releases Info on 'Unmasking' of Flynn to Capitol Hill*, Politico (May 13, 2020, 12:21 PM), https://www.politico.com/news/2020/05/13/republican-senators-michael-flynn-254726.

[6] 5 U.S.C. § 552(a)(4)(A)(iii).

ODNI-20-1953

government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[7] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[8]

American Oversight has also demonstrated its commitment to the public disclosure of documents and creation of editorial content through numerous substantive analyses posted to its website.[9] Examples reflecting this commitment to the public disclosure of documents and the creation of editorial content include the posting of records related to an ethics waiver received by a senior Department of Justice attorney and an analysis of what those records demonstrated regarding the Department's process for issuing such waivers;[10] posting records received as part of American Oversight's "Audit the Wall" project to gather and analyze information related to the administration's proposed construction of a barrier along the U.S.-Mexico border, and analyses of what those records reveal;[11] posting records regarding potential self-dealing at the Department of Housing & Urban Development and related analysis;[12] posting records and analysis relating to the

---

[7] *See id.*

[8] American Oversight currently has approximately 15,500 page likes on Facebook and 104,200 followers on Twitter. American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Jul. 13, 2020); American Oversight (@weareoversight), Twitter, https://twitter.com/weareoversight (last visited Jul. 13, 2020).

[9] *News*, American Oversight, https://www.americanoversight.org/blog.

[10] *DOJ Records Relating to Solicitor General Noel Francisco's Recusal*, American Oversight, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, American Oversight, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[11] *See generally Audit the Wall*, American Oversight, https://www.americanoversight.org/investigation/audit-the-wall; *see, e.g., Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall*, American Oversight, https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-funding-no-timeline-no-wall.

[12] *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, American Oversight, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business.

federal government's efforts to sell nuclear technology to Saudi Arabia;[13] and posting records and analysis regarding the Department of Justice's decision in response to demands from Congress to direct a U.S. Attorney to undertake a wide-ranging review and make recommendations regarding criminal investigations relating to the President's political opponents and allegations of misconduct by the Department of Justice itself and the Federal Bureau of Investigation.[14]

Accordingly, American Oversight qualifies for a fee waiver.

**Guidance Regarding the Search & Processing of Requested Records**

In connection with its request for records, American Oversight provides the following guidance regarding the scope of the records sought and the search and processing of records:

▪ Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics. For instance, since the request seeks "communications," please search all locations likely to contain communications, including relevant hard-copy files, correspondence files, appropriate locations on hard drives and shared drives, emails, text messages or other direct messaging systems (such as iMessage, WhatsApp, Signal, or Twitter direct messages), voicemail messages, instant messaging systems such as Lync or ICQ, and shared messages systems such as Slack.

▪ In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

▪ Our request for records includes any attachments to those records or other materials enclosed with those records when they were previously transmitted. To the extent that an email is responsive to our request, our request includes all prior messages sent or received in that email chain, as well as any attachments to the email.

---

[13] *Investigating the Trump Administration's Efforts to Sell Nuclear Technology to Saudi Arabia*, American Oversight, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia.
[14] *Sessions' Letter Shows DOJ Acted on Trump's Authoritarian Demand to Investigate Clinton*, American Oversight, https://www.americanoversight.org/sessions-letter.

- Please search all relevant records or systems containing records regarding agency business. Do not exclude records regarding agency business contained in files, email accounts, or devices in the personal custody of your officials, such as personal email accounts or text messages. Records of official business conducted using unofficial systems or stored outside of official files are subject to the Federal Records Act and FOIA.[15] It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, by intent or through negligence, failed to meet their obligations.[16]

- Please use all tools available to your agency to conduct a complete and efficient search for potentially responsive records. Agencies are subject to government-wide requirements to manage agency information electronically,[17] and many agencies have adopted the National Archives and Records Administration (NARA) Capstone program, or similar policies. These systems provide options for searching emails and other electronic records in a manner that is reasonably likely to be more complete than just searching individual custodian files. For example, a custodian may have deleted a responsive email from his or her email program, but your agency's archiving tools may capture that email under Capstone. At the same time, custodian searches are still necessary; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.

- In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please

---

[15] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

[16] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016).

[17] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

ODNI-20-1953

take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

**<u>Conclusion</u>**

If you have any questions regarding how to construe this request for records or believe that further discussions regarding search and processing would facilitate a more efficient production of records of interest to American Oversight, please do not hesitate to contact American Oversight to discuss this request. American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and your agency can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in an electronic format by email. Alternatively, please provide responsive material in native format or in PDF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, please contact Hart Wood at foia@americanoversight.org or 202.873.1743. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

# EXHIBIT F

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC


Austin Evers                                                        August 6, 2020
American Oversight
1030 15th Street NW
Suite B255
Washington, DC  20005

Mr. Evers,

        This letter acknowledges receipt of your Freedom of Information Act ("FOIA")
request dated and received by the IMD on 4 Aug 2020, in which you seek, all email
communications (email messages, email attachments, complete email chains, and calendar
invitations) sent by Acting Director of National Intelligence Richard Grenell or Senior
Advisor Kash Patel containing any of the 20 key terms provided.

        You asked that we produce all responsive records from the cutoff date employed by
our agency on American Oversight's similar request (given tracking number DF-2020-
00244) submitted on May 20, 2020, through the date the search is conducted.

        **Your request has been assigned ODNI tracking number DF-2020-00317.
Your request for a fee waiver has been granted.**

        We will begin to process your request; however, due to impacts caused by the
COVID-19 virus, there may be delays in processing requests.   We apologize for any
inconvenience this may cause.

        To assist you with any aspect of your request you may contact me, the FOIA Public
Liaison, at my contact information below.  You may also contact the Office of Government
Information Services ("OGIS") of the National Archives and Records Administration to
inquire about the mediation services they provide. OGIS can be reached by mail at 8601
Adelphi Road, Room 2510, College Park, MD 20740-6001; telephone (202) 741-5770;
facsimile (202) 741-5769; Toll-free (877) 684-6448; or email at ogis@nara.gov.

        If you have any questions, please feel free to contact our Requester Service Center
at dni-foia@dni.gov or (301) 243-1499.  You may also reach out to me directly at
dni-foia-liaison@dni.gov or (301) 243-2025.

                                Sincerely,

                                Sally A. Nicholson
                                Chief FOIA Branch
                                FOIA Public Liaison
                                Information Management Division

1

# EXHIBIT G

1                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

2

3  AMERICAN OVERSIGHT,         )
                         )

4        Plaintiff,      )
                         )

5      vs.              )  CASE NO. 1:24-cv-02789-PLF
                         )

6  U.S. DEPARTMENT OF DEFENSE,  )
  et al.,                )

7                         )
        Defendants.     )

8  _____ )

9

                TRANSCRIPT OF MOTION HEARING
10     **BEFORE THE HONORABLE PAUL L. FRIEDMAN, DISTRICT JUDGE**
              Monday - October 21, 2024
11             2:36 p.m. - 4:18 p.m.
               Washington, DC

12

13  **FOR THE PLAINTIFF:**
      American Oversight
14      BY:  DANIEL H. MARTINEZ and ELIZABETH HADDIX
      1030 15th Street, NW, Suite B255
15      Washington, DC 20005
      (202) 897-2465

16

17  **FOR THE DEFENDANTS:**
      United States Attorney's Office, Civil Division
18      BY:  DEDRA S. CURTEMAN
      601 D Street, NW
19      Washington, DC 20530
      (202) 252-2550

20

21

22                  **SONJA L. REEVES**
            **Registered Diplomate Reporter**
23            **Certified Realtime Reporter**
           **Federal Official Court Reporter**
24           333 Constitution Avenue, NW
             Washington, DC 20001
25     Transcript Produced from the Stenographic Record

1          And finally, the discussion about the failure to

2     allocate resources, again, this is a narrow request long past

3     since the 20 days, and for those reasons we believe that the

4     preliminary injunction is justified.

5          THE COURT:  Thank you.  Why don't we take about ten

6     minutes and then we'll come back.  Maybe 15.

7       (Recessed from 3:30 p.m. to 3:44 p.m.)

8          THE COURT:  Anybody else have anything else they want

9     to say?

10         MS. CURTEMAN:  No, Your Honor.

11         MR. MARTINEZ:  No, Your Honor.

12         THE COURT:  Give me a minute, please.  I have

13    something I want to say.

14      (Pause)

15         THE COURT:  Okay.  So I'm going to give you an opinion

16    now.  Hopefully, it will be reasonably articulate.  It's always

17    more articulate if you write an opinion, but it takes longer.

18         So the plaintiff is asking for a preliminary

19    injunction, and they are asking for expedited processing and

20    asking me to direct the defendants, the Department of Defense

21    and the Department of the Army, to expedite their FOIA request.

22         And secondly, they are asking for a decision on their

23    FOIA request, which, as I understand it is a request for a

24    mandatory injunction to require the defendants to produce any

25    nonexempt records by the date certain that they have asked for,

1  which is later this week, October 26th [sic].

2       And their assumption is that it's a narrow request,

3  that there may only be one document or a few documents, because

4  what is requested is any report, including, but not limited to,

5  an incident report filed with U.S. Army Military Police Corps

6  officials and/or any other military officials that are at

7  Arlington National Cemetery regarding the alleged incident

8  reported to have taken place during the August 26, 2024 visit

9  by former President Trump to Arlington National Cemetery.

10       And originally they said, "Given that this request is

11  limited to a specific, recent, and readily identifiable

12  document or documents, American Oversight expressed that this

13  request can be processed very quickly and promptly."  That was

14  what they asked for on August 29th.

15       When they basically heard nothing, perhaps in part

16  because of the Arlington National Cemetery website or some

17  other kerfuffles that are outlined in the plaintiff's

18  September 25th document, letter, asking for expedited

19  processing of their request, they didn't hear anything in the

20  month between August 29th and September 29th, and so they then

21  made a request for expedition.

22       Of course, the government says that they waited a

23  month to ask for expedition.  The plaintiff's response is we

24  only waited a month because we thought they would respond and

25  instead we got all these things that now indicate that the

1  Arlington National Cemetery website was all messed up or
2  whatever else.

3       So the argument is being made by the government that
4  the plaintiffs cannot and have not met the requisites for
5  expedition.  As we know, the legal standard for preliminary
6  injunction is that the moving party, the plaintiffs, must
7  establish the likelihood of success on the merits first, then
8  likely irreparable harm in the absence of preliminary relief,
9  and the balance of the equities in its favor in accord with the
10  public interest.  That's the *Winter* case from the Supreme Court
11  and numerous cases from this circuit applying the *Winter* case.

12       So have the plaintiffs met their burden for expedition
13  and for the immediate release of any nonexempt records, which
14  they assume and I assume are limited in number?  So I'm going
15  to grant the motion for preliminary injunction for these
16  reasons:

17       The Freedom of Information Act itself in Title 5
18  United States Code Section 552 in subpart, I think it's
19  (a)(1)(D)(i) and (a)(1)(E)(i), but I may be wrong.  I know it's
20  a subpart (D)(i) and subpart (E)(i).  And (D)(i) says that each
21  agency may promulgate regulations concerning FOIA requests.

22       More importantly, as relevant here, the statute says,
23  "Each agency shall promulgate regulations pursuant to notice
24  and receipt of public comment, providing for expedited
25  processing of requests for records in cases in which the person

1    requesting the records demonstrates compelling need."

2         The Department of Defense has promulgated such

3    regulations, and they are found at Title 32 C.F.R. Section

4    286.8.  And they say that, "FOIA requests shall be processed

5    with expedition where there is compelling need and where the

6    persons or requester requests expedition and demonstrates a

7    compelling need."  So everybody agrees the burden is on the

8    requester to show compelling need.

9         The regulation says, "A compelling need exists for a

10   variety of reasons," but the most relevant one here is "if the

11   information is urgently needed by an individual primarily

12   engaged in disseminating information in order to inform the

13   public concerning actual or alleged governmental activity."

14        It goes on to say -- that DOD regulation goes on to

15   say, "For requester seeking expedited processing under

16   paragraph (e)(i)(B), a requester who is not a full-time member

17   of the news media must establish that the requester is a person

18   whose primary professional activity or occupation is

19   information dissemination and not an incidental or secondary

20   activity."

21        So American Oversight is not a full-time member of the

22   news media.  They say that they are showing compelling need

23   because their primary activity is disseminating of

24   information -- the dissemination of information.

25        The government says that there is no compelling need,

1    there is no urgency, there is no current exigency or interest

2    in these documents because in part one of the arguments is that

3    the plaintiff waited a month to make the expedition request,

4    but I don't find that troubling, because they couldn't get an

5    answer from the Veterans Administration by asking for prompt

6    processing, so that's when they filed the expedition request.

7           In fact, one could argue that to the extent there is a

8    public interest in this material, that it's even more important

9    and more exigent now as we get closer to the election.  The

10   government says the media has not been reporting on this, the

11   public is not clamoring for this, there are only three NPR

12   articles.

13          Well, a quick Google search says that's not true.

14   There were reports on this incident on CNN, on Al Jazeera, on

15   MSNBC, all the major outlets.  And so out of the likelihood of

16   success argument, we have to show -- or the plaintiffs have to

17   show a compelling need, urgency, which is part of compelling

18   need, urgent public interest, and that there is a substantial

19   public interest still, and in order to show those things, they

20   have to show that their primary activity is disseminating

21   information.

22          So we discussed a lot of cases here today, and among

23   the cases the government relies on is Judge Kotelly's opinion,

24   *Allied Progress*.  The plaintiffs rely on a number of cases that

25   I think are more relevant.  And I mean, I would start, despite

1    the government's correct observation with Judge Cooper's

2    opinion on *American Oversight versus U.S. Department of State*,

3    in which he granted expedition, granted a preliminary

4    injunction on expedition, and that's 414 F.Supp. 3d, page 182.

5         The government is correct that Judge Cooper did not

6    explicitly make the findings that are required, but it's

7    implicit in that opinion that he did when he found the

8    substantial likelihood of success.  What was sought there is

9    information about the government's -- Mr. Trump's former legal

10   advisor, the now disbarred Rudy Giuliani, in connection with

11   the January 6th Committee.  And Judge Cooper found that there

12   was a likelihood of success on the merits.

13        And as for irreparable harm, he said that -- and this

14   had to do with Mr. Giuliani's alleged efforts to enlist

15   Ukraine's assistance in furthering the president's reelection

16   prospect.  On the irreparable harm front, Judge Cooper said,

17   "Time is clearly of the essence.  The impeachment inquiry is in

18   full swing, and, as noted above, congressional leaders expect

19   it to conclude by Christmas, so it's time."

20        Implicit in this is that American Oversight is

21   primarily engaged in disseminating information, or else Judge

22   Cooper wouldn't have reached these other questions, but he

23   didn't specifically say that, I get that.

24        So let's look at some other cases.  In *Protect*

25   *Democracy versus U.S. Department of Defense*, 263 F.Supp. 3d

1    293, Judge Cooper granted preliminary injunction for processing

2    because it related to cruise missile strikes on a Syrian air

3    base, and he found that, "Protect Democracy has shown it's

4    entitled to expedited processing," for reasons he discussed in

5    that opinion, and the timing of all of this.  He did not find

6    all the other requisites; he only found some of them.

7        However, in *Brennan Center for Justice versus*

8    *Department of Commerce*, Judge Kelly was dealing with the 2020

9    U.S. Census, and he found there was a lot of dispute and debate

10   about whether the Commerce Department had done some

11   inappropriate things in counting or not counting certain people

12   with respect to the 2020 census that would affect people's

13   right to vote or not.

14        And Judge Kelly found that there was an urgency to

15   inform the public before the election because people want to

16   know if the Commerce Department under Secretary Ross and the

17   Trump administration had messed around with the census before

18   they went to the polls in 2020.  And he found there was a

19   likelihood of success on the merits of expedition, that there

20   was widespread and exceptional interest in the matter, there

21   were numerous articles about the matter which raised questions

22   about the government's integrity, and that there was an urgency

23   to inform the public by the Brennan Center, which it said is a

24   person or entity primarily engaged in disseminating

25   information.

1    While the Brennan Center had lots of other things as

2  well, it regularly writes and publishes and disseminates

3  information and maintains an online library of numerous

4  articles.  That's a quote from their website, I believe.  That

5  there was an urgency to inform the public of these matters.  He

6  decided this on October 30, 2020, as we were approaching the

7  2020 election.

8    *Center for Public Integrity versus U.S. Department of*

9  *Defense*, Judge Kotelly, "We need an informed electorate," she

10  said.  Expedited processing was approved by Judge Kotelly on a

11  motion for preliminary injunction.  "Only an informed

12  electorate can develop its opinions of its elected officials,"

13  she said.

14    And this related to the administration's policy of

15  conducting surveillance or alleged policy of domestic

16  communications about prior judicial -- or maybe that's not this

17  case.  She was quoting electronic privacy and phone, and that's

18  what she was talking about.  In this case, this had to do with

19  the Defense Department's handling of the Ukraine security

20  assistance program.  She said, "This is a matter of immediate

21  concern to the American public, given extensive media interest

22  in the fate of the program and pressure placed upon the

23  Department regarding this program."

24    As to irreparable harm, this was during the time of

25  the impeachment proceedings relating to Ukraine, and she

1   thought and said that, "The public should be informed about

2   matters relating to the impeachment proceeding.  The

3   dissemination of information relating to the ongoing

4   impeachment proceedings contributes to an informed electorate

5   capable of developing knowledge of opinions and sharing those

6   knowledge of opinions with their elected leaders.  Absent

7   expedited responses, it's not clear that the public would

8   otherwise have access to this relevant information."

9           All of these courts were applying the *Al-Fayed*

10  factors.  And then there is Judge Sullivan's opinion in *Protect*

11  *Democracy versus United States Department of Justice*, 498

12  F.Supp. 3d 132, relating to voter fraud in the 2020 election,

13  and specifically the investigation of mail-in voter fraud,

14  getting close to the election.

15          So those are all the cases -- those are not all of the

16  cases.  Those are some of the cases that support the

17  plaintiff's position.

18          The government relies on *Allied Progress*, Judge

19  Kotelly's opinion, 2017 Westlaw 1750263 in 2017 where she

20  denied preliminary injunction because she found that they were

21  not primarily engaged in the dissemination of information and

22  urgency, both.

23          Again, those were the facts of that case as she found

24  them, but as I just cited in another Judge Kotelly opinion,

25  clearly each of these cases is very fact specific in whether

1    someone has met their burden.

2        So I find that the defense has shown -- plaintiffs

3    have shown compelling need and an urgency.  The question that

4    is a part of this is whether American Oversight is primarily

5    engaged in disseminating information, and the government says

6    -- they make the statement that it's very conclusory.

7        The plaintiffs in a number of places, but particularly

8    I think in their September 25, 2024 request for expedition,

9    say, "I further certify that we are primarily engaged in

10   disseminating information to the public.  Our mission is to

11   promote transparency in government, to educate the public about

12   government activities and ensure the accountability of

13   government officials."

14       "American Oversight gathers information of potential

15   interest to a segment of the public, uses its editorial skills

16   to turn the raw material into distinct work and distributes

17   that work to an audience.  It educates the public through

18   reports, press releases and other media.  American Oversight

19   also makes the materials it gathers available on its public

20   website and promotes their availability on social media

21   platforms."

22       Putting it on a public website is disseminating it to

23   the public.  Writing and issuing reports and press releases is

24   disseminating it to the public.  It's not conclusory.  They

25   have made that representation.  And as they point out in their

1    reply memorandum at page 11, there are other organizations that

2    have similar missions and similar ways to disseminate

3    information and expedition has been granted to them.

4         And they cite in particular the *Protect Democracy* case

5    that I discussed a little while ago, 263 F.Supp. 3d at 293, but

6    the particular discussion and conclusion about dissemination is

7    at page 298 of that opinion.  I think the *Brennan Center*

8    opinion is another one.

9         So we are now two weeks before the election, and I

10   think that there are segments of the public that would like to

11   know and there is even more urgency to the request now than

12   there may have been in August or September.  The request is

13   narrow.  It may only be one report or a number of documents.

14        Presumably, even though the Department of Defense and

15   the Department of the Army will have to do a search in order to

16   look, "Arlington National Cemetery," can do a search term.  You

17   can do "Arlington National Cemetery, August 26, 2024."

18        So I think I have discussed likelihood of success on

19   the merits and irreparable harm.  And the other two prongs for

20   preliminary injunction, the public interest and equitable

21   concerns, I think that the balance of the equities and whether

22   it's in accordance with the public interest, as was said during

23   the oral argument, I think once I find irreparable harm, seems

24   to me that, and the urgency in the public interest also

25   effectively answers the public interest in balance of the

1    equity prongs.

2          So I think I have covered what I want to say.  And to

3    me, that is sufficient, but I'll ask either side if they want

4    to say anything further to deal with the question of the right

5    to a preliminary injunction directing expedition under the

6    statute and regulations, but given what I have said about that,

7    and the fact that the election is two weeks away, it seems to

8    me -- and the fact that it's a narrow request for nonexempt

9    records and it may only be one report or a few documents, that

10   what I have said also is sufficient to grant the request for

11   release of nonexempt documents.

12         Let me first ask the plaintiffs if there is anything

13   you think I have missed or need to address, and then I'll ask

14   the government a similar question.

15         MR. MARTINEZ:  Thank you, Your Honor.  I just want to

16   be clear.  What is the date that you are --

17         THE COURT:  What is it you're requesting?

18         MR. MARTINEZ:  We requested Friday, October 25th.

19         THE COURT:  For release.

20         MR. MARTINEZ:  For release.

21         THE COURT:  So I order expedition, which means start

22   tomorrow looking for the stuff, and so I'll order release by

23   Friday, October 25th.

24         MR. MARTINEZ:  Thank you, Your Honor.

25         MS. CURTEMAN:  Your Honor, the government would just